Good morning your honors, I'm Jonathan Milling. I am pleased to be able to represent Kenyada Jaqu in connection with his appeal here this morning from the District Court of South Carolina. Mr. Jaqu effectively raises two different issues challenging what happened for the District Court. First, the Briggs and Erlinger issue. It is clear that his status as a perceived armed criminal under the ACCA statute was not alleged in the indictment, was not presented to the jury, and was not found beyond a reasonable doubt. The government really doesn't challenge that but rather suggests that we proceed under the harmless error statute or a standard. My client also raises one additional issue that the District Court erred and committed abuse of discretion in failing to grant his motion to proceed pro se at the sentencing. With regards to the first issue, the Erlinger issue, the government relies upon several different narcotics convictions in order to attempt to demonstrate harmless error in this case. We have a March of 2011 conviction that I cannot in good candor argue the court should not be treated alone. That is a separate event. But we do have several arrests or several incidents rather in August of 2015 within a one-week time period, all involving Richland County, all involving heroin, all involving a singular arrest that should have been presented to the jury, that should have been evaluated by them in determining whether or not... I gather your argument is that those three could be considered part of a single scheme. Could and candidly should, Your Honor. Well, should is another argument. The question is whether it's could to get over the harmless error. In other words, if it's very clear that... I mean, in Brown, we had them months apart and some years apart. So there we could conclude there's just no chance that a jury could find them not separate. But here, your argument is that within a week could be argued to be a scheme and therefore it should not be considered harmless, I gather. Yes, sir, Your Honor. And when we look at the standard as to whether or not there's overwhelming or uncontroverted evidence that, Your Honors, looking at this would conclusively determine that a jury would find that there are different occasions beyond a reasonable doubt. That's where I don't think that the government is going to be able to meet their burden of proof. Mr. Milling, we don't even get there if we agree with you that Mr. Jackley was denied his right of self-representation. Well, that is correct, Your Honor, but I do think that it would be helpful for the district court on remand to know whether or not this panel, having already raised this issue, whether or not this panel determines that the district court can continue to find that he was a career, an armed career criminal. Right. Mr. Milling, where Judge Keenan is going with this, I think is, I mean, these offenses that happen on different days and we can play around this all we want, but I think the law is pretty clear. If it happens on separate days, it's suitable for predicates for the Armed Career Criminal Act. Where Judge Keenan has pointed you to is probably the reason, at least from my perspective, why we're even here arguing this case, at least in my thought, and that is this whole pro se business, you know, which boils down to a simple question. Do we treat the individual who wants to represent themselves at a sentence like we do in a capital case? In other words, where is the law on that? We've not spoken to it that I know of in the Fourth Circuit, maybe alluded to it, but that seems to be at least my thought process, but I invite my colleagues to correct me if I'm wrong on it, but we can talk about this Armed Career Criminal Act all day long and talk about the scheme, but I think the law is against you on that one, at least it seems to be pretty clear to me, but you might have something on this pro se. Now, what you win, I don't know. I don't know what you win. If an individual wants to go pro se and he's got a certain sentence and you throw it out, I mean, the sky's the limit then. I mean, you can go back to the max on this. I don't know what you win, even if you do that, but I just want to give that at least the context of where Judge Keenan was sort of pushing you gently, sounds like to me. Well, and Mr. Milling, you know, the thought, or at least my reasoning here is that the issue of self-representation and a failure of self-representation of that right is a In other words, if we find that he was denied his right of self-representation, everything's over. It goes back. The question that I have as a follow-up, though, would be if we agree with you that on this record he was denied his right of self-representation, would the district court still have a right to consider the issue of self-representation if new facts arose? In the earlier proceeding, the trial court did not make any finding that the defendant was disruptive, so the government doesn't have that to rely on in terms of the assertion of self-representation. Could the district court revisit that issue if the defendant's conduct comes into question at a re-sentencing? I believe that certainly a new district judge would be in a position to be able to evaluate anew. The challenge that we've got in this case is the original district judge was Michelle Childs, who is no longer with the district court. She's now on the Court of Appeals for the District of Columbia, but your Honor, you're absolutely right with regards to how she found earlier. The only thing that she looked at and the only finding that she made was that it was untimely. I thought, sir, I thought she committed the error alluded to by Judge Winn. I thought she assumed that once she went through the analysis during the trial, that that would extend into the sentencing, and there's a lot of logic to that. But I think in circumstances where the sentencing always results in a break, you have to prepare the pre-sentence report, and in this case, it's months, the better jurisprudence seems to me that you have to conduct the Feretta analysis again during the sentencing. And she didn't attempt to do that, and so whatever judge, whether it's her or somebody else, would go through the Feretta analysis, including all the aspects of that, and decide whether he can represent himself or in these standby counts or in these counts or whatever. But the district court would have to do that in the first instance, wouldn't it? Yes, Your Honor. I do believe so. Yes, Your Honor. Now, your question is whether we should then instruct the district court on Erlinger, and my question is that that might be just totally hypothetical. The government might choose not to even rely on this record, because his offense level, I think it was around 39 or so, it could change, but it's around 39, and you reduce his criminal history from six to five, and you still get the same sentence, 360 to life. And so the government may just choose not to even engage that whole process of enhancing it for prior offenses. That's something that's up in the air, and I'm not sure we would be doing much more than giving an advisory opinion in the abstract when we don't know what the issues are. It seems to me if you have a resentencing to determine representation, you're going to have to start from scratch, receive the objections about the pre-sentence report and recalculate the guidelines and all the other stuff. Wouldn't you agree with that? I do agree with that wholeheartedly, your honor. And there were other objections which were lodged by counsel who had been appointed to represent Mr. Jack Hewitt's sentencing. Those objections were deemed unnecessary once the armed career criminal determination was made. Those did or had the potential of impacting his offense level, the drug wage, there was a stash house enhancement. There are other enhancements at play which counsel was prepared to argue should go to the wayside based upon facts and arguments that they were intending to present. But the end result of where both the questions asked by Judge Niemeyer and Judge Kenan, as I understand, is the remedy that would be given here if we agreed here, at least in terms of that you have a Sixth Amendment right on sentencing, would be to send it back to the district court. I don't think it has to be Judge Childs, it could be any judge, but back to the district court who then would conduct a proper inquiry and, you know, that is, do it without consideration of the trial proceedings and then look to see if the timing, I guess, and the disruptiveness would be issues that would come up as to whether he should proceed per se. Depending on how that question comes out, it could be the end of the matter says no, it could be, you know, which at that point, I guess, I don't know how we're going to avoid getting another appeal on this one, to be honest with you, and I wish we could figure out a way, but it seems like to me there's going to be another appeal, no matter how it turns out. If he represents himself, he's going to appeal, what's going to happen if he doesn't get the representative, then you've got the actual review of what the trial judge did. But the end result, again, is I don't think we're in a position to say he, that it was error not to allow him to go per se because that's never been determined from what I can tell by the district court judge. And is that-  So you're not asking us to render a determination he is entitled to be per se? My argument is that he was denied the right to proceed per se based upon the manner in which the district judge ruled. She went through the analysis, as outlined in precedent, she looked at whether or not he made a request. I think that the request was clear and unequivocal. Your point is made. I think we're sort of talking the same thing except I'm just saying what the result is, you can say to me, you didn't do it, but the result is just send it back. That's all I'm saying on it. Yes, Your Honor. You know what is interesting, I assume he must have consented to you coming up and representing on appeal. That's an interesting thing.  He wasn't representing himself on sentencing, but he doesn't want to represent, has he made an appeal to represent himself on appeal of this? He has not made that request, and I will tell you, I thought through this process earlier today, he and I have a good relationship right now. He just might want you to represent him going back, and then we've got a whole different problem.  Yes, sir. Mr. Milling, he may become so impressed with your performance on appeal that he says you're my man. Anyway. Okay. I can overhear. Thank you.  We'll hear from that government. Mr. Booth? You'll have to unmute it yourself. Can you hear me now? Yes, sir. Thank you very much. May it please the court. First of all, the omission of Jaku's prior drug convictions from the indictment and from the jury's verdict was an Erlinger error, but under Brown, the error was harmless because Jaku's prior drug convictions, all four of them, occurred on the same day. Well, on that issue, I know exactly where your argument is. You briefed it, and Brown is pretty clear on this. The standard is a very high one, which is that the evidence has to be very strong that the error is harmless, that the same result would have happened. My only point in this case is that we have three drug transactions within a week, and they need, in order to do the enhancement, they have to be treated separately, and no one has, the jury has not determined whether they're separate or part of a single scheme. I don't know what the evidence is one way or the other, but it seems to me, when you read Wooden and some of these other cases, there's a possibility that those drug offenses may be a part of, if there's evidence, part of a single scheme. Maybe it's the same houses, and he goes back each time to a different house in the neighborhood, or he's working with somebody else. We don't know all of that. The only point that I think we're making with our questions is, if we need to have a determination on the structural error, that is, if we conclude it's error not to re-analyze, conduct the Feretta analysis during sentencing, I think everybody agrees the district court didn't conduct the whole analysis at that point in time, that if it's true that the district court has to conduct the Feretta analysis, then we have to send it back to let the court do its job on that, and let the chips fall where they may. It may be that you choose not to seek enhancement, because I don't think you gained one month in sentencing by the enhancement. The sentencing range would still be 360 to, on my calculation, 360 to life. You may say that, Debra, and I haven't gone, but it's close. We don't know what's going to happen. We don't know what objections. We don't know how the district court will react during a resentencing when he's representing himself or not. He may choose to hire Mr. Milling, but I guess our question to you really is, if we conclude that the Feretta analysis needs to be done by the district court in the first instance, shouldn't we leave the Erlinger issue alone? Judge Niemeyer, you've sort of raised the second issue along with the first issue, so let me go to the second issue right away, because obviously that's an issue that the court is involved with. Our argument with respect to the second issue is that the law seems to be that if a defendant first asserts his right to self-representation after the trial has begun, the right may have been waived at that point. We have held that, and I've actually written on that subject, and you absolutely agree that's a correct principle. The question is whether that principle extends to sentencing, which is a separate proceeding conducted months after the verdict. And we have not decided that issue, but if it is a separate proceeding which you have to conduct a Feretta analysis again, in other words, we would have to conclude he didn't waive it all the way through, he waived it for the conviction portion, but now during sentencing, he says, I want to be sentenced, I want to be represented, or I want to represent myself. Now in this case, he said, I want to represent myself. And at that point, the district court basically concluded what you suggested, that, well, he'd already waived by that issue during the trial. And the question is a question of law, whether you have to conduct a Feretta analysis again during sentencing. And it seems like there's quite a bit of support for that, isn't there? Well, actually, Judge Niemeyer, with respect to the cases cited in my brief at pages 16 and 17, the cases seem to hold that if you make a request for self-representation after the trial has begun, a district court does not abuse its discretion in denying that, because a district court can determine... That principle is absolutely correct. But the question is, after the trial has begun, the question is now do we have to do it after the sentencing has been done? In other words, is the sentencing part of the trial? And the question you need to answer is whether the sentencing has to be treated again. This is a structural question, representation by counsel. And the question is whether we have to go through the whole analysis again at the incipient, at the beginning of the sentencing. Now, if we get into the middle of sentencing and he wants to change his mind, your principle is applicable. But the question is, do we have to do a new Feretta analysis for the beginning of sentencing? And I suggest the whole notion... We have many cases where the guy represented himself at trial and he hired counsel for sentencing. So they're treated quite separately in terms of representation. We do not have a case that mandates that yet, as Judge Wynn pointed out. But it seems to me there's a lot of persuasiveness, and that's what I'd like you to address. Your principle that you articulated is exactly true. Once a trial begins, he's deemed a waive and the court has a lot of discretion. But now we have a new trial, so to speak, on sentencing, maybe. And the question is, do we have to again engage in the Feretta analysis when he demands the right to represent himself? Answer, in the government's view, Judge Niemeyer, is no. We consider sentencing part of the regime. Okay, what case do you have for that? Any? The closest case that I have with respect to whether you affirm the denial of right to self-representation, where the motion was made two days before sentencing, is the unpublished decision by this court in United States v. Coleman, cited in my brief at page 17. It's at 2023 West Law 301-8421. Let me indicate why we think that a sentencing proceeding is not a separate part of a trial for purposes of the Sixth Amendment. A sentencing is really part of the trial, and one reason it's part of the trial is because a district court has got to consider the events that occurred at trial, for example, in making rulings under the sentencing guidelines. A defendant, for example, is not going to be able to have information known by himself if he wants to represent himself that would allow him to really engage with the pre-sentence report and with the government's representation. So we do not draw a distinction between trial and sentencing for purposes of self-representation where the defendant has made the request sometime after the trial. Okay, well, Mr. Booth, excuse me for interrupting, but I'm sorry, I thought you were done with your sentence. No, you're fine. Would we be creating a circuit split if we adopt your point of view on this? Several circuits, as you know, do not agree with this position that you're advocating before us today. I didn't find a specific case in point which said that there is a difference between a defendant. Doesn't United States v. Davis, the 11th Circuit, they talk about the views of the 5th, 6th, 7th, 9th, and 10th that a defendant can timely request to proceed per se, and in one of those cases I think it was just the day of sentencing the defendant was given that right. So it seems to me that you're pushing the rock up a steep hill in terms of your rationale, especially in a case where the facts show that there was a seven-month period of time that passed after he asserted his right to self-representation in sentencing. There was no sentencing. So how can we say the court didn't commit legal error if she said it was untimely and nothing happened for seven months? I understand the government shouldn't be unfairly put in a position where it is given a last-minute request, but here the government wasn't put at any kind of a deficit by this request being made seven months before the sentencing actually took place. What is the underlying logic of your position? The government had time to prepare. The defendant was clear in what he was saying. So where's the logic to saying that as a matter of law you can never do this? My position, Judge Keenan, is that you evaluate a district court's denial of the defendant's motion to represent himself at the time that the judge makes the ruling. And the fact that ultimately the sentencing proceedings were delayed for several months afterwards should not retrospectively invalidate the judge's ruling when the district court has said that in this case you waited for approximately four and a half months after the verdict was entered and after your defense attorney filed objections to the pre-sentence report that I'm finding that in the circumstances of this case, this is untimely. And you have a lot of cases from this particular circuit that hold that where a defendant does not make that motion before trial, then the issue is waived and the district court can deny it on untimeliness grounds. So your point is well taken, Mr. Booth, and you've answered the question I guess Judge Keenan and Judge Niemeyer has alluded to, but I think you want to cut to the chase on it. It really comes down to the initial question, does the defendant have a Sixth Amendment right at that point to represent himself at a sentencing hearing? Judge Keenan's pointed out, and I'll tell you, based upon my research, every other circuit that's looked at this says yes. You're the only one that I know of that says the other way. But that doesn't mean it's the end of the story. It simply means that in this instance it would go back to the trial judge, still could come out and conclude just like you are arguing right now, he does not have a right to proceed, but they have to do it without regard to the trial, and then you would have to do it in a way so as to articulate how it's going to disrupt the proceedings or the timing and those things there. In other words, go through the analysis of it. So I think what you add is on the threshold question, does he have that Sixth Amendment right? And at least it seems to me the prevailing view is yes, he does. But that doesn't end it, that he just goes and represents himself. The trial judge then has that duty to go forth and look at it as you do with any other type of a pro se proceeding. So the end result is, and this is why it ties in with the first issue on it that you bring on the ACCA, is if we take that position and send it back, why don't we just let the trial judge do the trial judge's job, which is pretty simple and straightforward. And the trial judge could go either way. As I said, he could decide no, you don't represent yourself, or yes, you do. And I don't know what kind of quagmire that creates. You go back through the whole process. But that's an issue for the trial judge, not us. I think if we determine that Sixth Amendment right does exist in conformity with the other circuits that have addressed this. Let me also emphasize that our second point here was that the alternative grounds for upholding the district court's ruling in this case was that the defendant was uncooperative and disruptive at sentencing. But she didn't make a finding. Judge Childs did not make a factual finding that he was disruptive. You're saying that he was disruptive because he asserted he was a sovereign citizen and all the other aspects of what the trial record showed. But Judge Childs never said this defendant was disruptive so as to nullify his right of self-representation. She merely said too late. Well, that is true, Judge Keenan, but you can always affirm a district court's ruling on any ground in the record, whether the district court addressed it or not. And our position here is that the record conclusively shows that the defendant in this case was uncooperative and disruptive at sentencing. And the reason I say that is if you take a look at the sentencing transcript in this case, which is approximately 32 pages, and if you look at pages 2 through 10, which is approximately 30 to 31 percent of the entire sentencing transcript, what you have is a defendant who refuses to cooperate with the judge, refuses to identify himself, says he's a sovereign citizen and he's not under the jurisdiction of the court, and that causes the district court to interrupt the proceedings to go through an extended colloquy with the defendant in which he summarizes the case against him, in which he summarizes the pre-sentence report against him, in which he summarizes what she's going to do against him. And if you take approximately 31 percent of a sentencing transcript in which a judge has got the interrupted normal course of sentencing in order to explain to a defendant who's presenting a very frivolous, moorish American defense, then our position is that was disruptive and you can affirm the ruling below on that separate ground. Well, we could, but, you know, it seems to me that evidence may be very powerful evidence, but it seems to me one district judge could say, and Childs may have thought this, Judge Childs, that despite the fact he's disruptive, he can still represent himself. I didn't find it necessary to hire counsel. Or another judge would say that's too disruptive for me. We can't advance the proceeding and I'm going to hire counsel. But in either case, these are on the ground decisions that have to be made by the district court to decide whether the conduct before the district court is disruptive. And it seems to me if we were to conclude that this man's forerunner rights were not decided at the beginning of sentencing, then he may conduct himself totally differently the next time around. But going to that question, you raised the point, which I think is a good one, that the sentencing often relates to the trial and sentencing guidelines issues are sometimes rely on evidence presented at trial so that it should be treated as one proceeding. And my question to you is the counter fact is that we have new facts generated by these pre-sentence report that is put on trial. And in this case, his counsel did object to it. So there is now a new trial based on new evidence at sentencing that has to be resolved. And it seems to me in that circumstance, the defendant's consideration as to whether to represent himself could change or not. That would speak for the notion that we should have a new FREDA analysis during sentencing, even though there's going to be some allusion to trial evidence. Well, Judge Neubauer, again, the government's position is there's no firm break in our view between trial and sentencing. Because again, at sentencing, the judge is going to, in evaluating the guidelines, is going to have to refer to the evidence that came out at trial. You can also have to refer to a pre-sentence report, which is brand new evidence. And the defendant sees it for the first time after trial. And that whole thing could result in a big, long hearing, deciding whether the pre-sentence report is accurate or not, or resolving the objections. The calculations of the guidelines are based not only on trial evidence, but also on this new evidence brought in through the pre-sentence report, which is, as you know, reflects interviews conducted after trial, a man's criminal history, family background, and all kinds of other factors that are put in there and can be subject to dispute. Well, that's right, Judge Neubauer. And again, that's what the district court referred to in denying the JACU's motion for self-representation, was not only was it made after trial, but it was made after his counsel had actually filed objections to the pre-sentence report. So the district court viewed this as untimely, and under this court's general precedence under, my goodness, there's Hilton, there is Singleton, where you talk about abuse of discretion. All we're saying in this particular case, it was not an abuse of discretion, under the facts of this case, for the district court to have acted as it did. Now, if other circuits want to say that the district court should evaluate this again prior to sentencing. What is the standard in the initial instance, at the beginning of a trial, when a defendant asserts his right to represent himself, what is the standard the court follows? It's not abuse of discretion, is it? Well, a right to self-representation denial would probably be reviewed de novo. But the request for self-representation, it's got to be clear and unequivocal. It's got to be knowing, intelligent, and voluntary. And it's also, again, it's got to be timely under this court's decision in writing. I understand the timely issue. I'm trying to hype up the question I'm having. You say the court was under abuse of discretion standard. And I'm suggesting to you, if this is a new proceeding, a new trial, and we conclude that Feretta has to be, analysis has to be conducted again, it would not simply be at an abuse of discretion. It would be a question of whether the district court determined all those factors, whether it's knowing, understanding, all the factors that determine a Feretta claim. If you were to conclude that a sentencing hearing is a separate proceeding that requires a brand new Feretta analysis, there may be some logic to what you're saying, but our position is that a sentencing proceeding is not a separate proceeding from the trial. Okay, we understand that, yeah. That's my position. We ask to affirm the judgment. Thank you. I think we do understand that pretty clearly. And we don't have any precedent in this circuit, so we'll have to review all that again. Thank you, Mr. Booth. Mr. Milling, you have some rebuttal. Thank you, Your Honors. May it please the court. I will be very brief. I think that we were able to outline everything pretty clearly and carefully in my opening remarks. One thing that I did want to point out that I do think is relevant to the determination, the Coleman case, which was the unpublished opinion that was cited by Mr. Booth. I went back last night and reviewed that situation again. And while it's clear that it notes that the request was made only two days before the sentencing proceeding, that request was submitted to prison guards. It wasn't received by the court until the day after sentencing. Mr. Coleman, at the sentencing hearing, did not say anything about a desire to proceed pro se. And so he really did waive any rights to raise that issue in that instance. But this notion that sentencing and the trial are exactly the same and you can never request, or that we should have a bright line rule that if you don't request to proceed pro se before the trial, you can never proceed pro se after that point in time as being untimely, that just defies logic and defies the fundamental protections of due process in the Sixth Amendment because an individual may, following trial, decide that he does, in fact, want to proceed pro se. I've had cases in this district where that has been precisely the case. Someone gets convicted and wants to proceed pro se at sentencing. Yeah, but that logic is a little difficult because a person who exercises one position hears the government's case during trial and then after the government puts on its case said, I want to represent myself now. The court would justly say that's too big a change during trial and exercise its discretion not to allow that. It seems to me the argument that sentencing is part of trial has a lot of logic because of the fact that we're aiming for one judgment, conviction and sentencing. But the other side of the coin in your favor is that the sentencing is a procedure that takes into account new evidence. It's separated, always in the federal system, it's separated from the conviction because we have pre-sentence reports and objections of pre-sentence reports and other motions that can be decided. And so almost in every case we have this gap which generates new evidence for the sentencing proceeding. And that to me would argue that there may be a policy question as to whether the whole reason for Verretta wouldn't be served again by having that analysis conducted then. And I would agree with you on that last point that we need to conduct a new Verretta analysis if that request is made to the defendant for precisely that reason. These are different proceedings. Yes, the sentencing does rely upon conviction by the jury. It relies upon some of the evidence presented by trial. But when we open up Pandora's box with relevant conduct, there's so much more information that comes in. There are specific offense characteristics that may not have been presented at trial. You're looking at the criminal history, you're looking at the facts of the background and the characteristics of the defendant from growing up, his employment history, his education. All of these different factors make it a different proceeding and requires from a fairness standpoint that that Verretta analysis take place a second time. I would submit that if a timely, as it relates to the hearing at issue, if a timely request is made in relation to that new proceeding, then it should not be barred because the defendant did not make that request before a trial. Assuming that a proper Verretta analysis is conducted, that a clear and unequivocal request is made, that the defendant is making that knowing and intelligent and voluntary request to proceed in this manner and that a judge goes through that proper analysis, making sure that he is capable and he understands that there are pitfalls and caveats in proceeding pro se and that he will be held to the same standard as lawyers do. I just don't think that we can say because it didn't happen before trial, you can never proceed pro se. I think that that defies logic and defies the principles of the Constitution. All right. Thank you. Anything further? No, Your Honor. All right. First of all, I want to thank you, Mr. Milling, you were court appointed, right? Yes, sir. I want to thank you for that service. You know, we always recognize that and it's not just performa, it's damn important. You look through history and you see how many defendants get to be represented by counsel and I think we are a beacon on the hill and your service serves that purpose a lot. My pleasure. The second thing I'd like to say is that we normally come down in the Fourth Circuit and shake hands with counsel. It's a treasured tradition going back to the 1930s, Judge Parker, and we've held it fast and we would like to do it now. We can't, but we extend it to you virtually, I guess, however we can do that. We all feel very much appreciate your arguments. This is a civilized process where we can still shake hands after we disagree or at least show some levels of disagreement. But we're all proud of the system. Thank you very much and we'll adjourn court for the day. Thank you, Your Honor. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Paul V. Niemeyer, James Andrew Wynn, Barbara Milano Keenan